UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DORRIS DEMISON,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>            Defendant. | No. ED CV 08-219-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## PROCEEDINGS

Plaintiff filed this action on February 22, 2008, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 3, 2008, and March 31, 2008. The parties filed a Joint Stipulation on November 11, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on November 12, 1955. [Administrative Record ("AR") at 94.] She attended school through the tenth grade, and has past work experience as, among other things, a laborer, care provider, marker, child monitor, and nurse assistant. [AR at 199, 204, 210, 212, 250, 941.]

On June 19, 2003, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been unable to work since May 19, 2002, due to, among other things, headaches, pain in her back and neck, tingling and numbness in her muscles and bones, numbness in her face, dizziness, fatigue, and mood swings.[1] [AR at 93-96, 198, 207.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 41-44, 48-52, 53.] Hearings were held on February 3, 2005, and March 14, 2005, at which plaintiff appeared with counsel and testified on her own behalf. Testimony was also received from medical and vocational experts, and from plaintiff's husband. [AR at 826-57, 858-86.] On April 29, 2005, the ALJ determined that plaintiff was not disabled. [AR at 18-23.] Plaintiff requested review of the hearing decision. [AR at 12-15.] The Appeals Council denied plaintiff's request for review on January 18, 2006. [AR at 8-10.]

Plaintiff then filed an action in District Court, Case No. ED CV 06-297-PLA, challenging the Commissioner's decision. On March 21, 2007, the Court remanded the matter with instructions to consider the testimony of plaintiff's friend and to properly rate plaintiff's mental impairment. [AR at 898-908.] On May 24, 2007, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with the Court's 2007 Order.[2] [AR at 913-14.]

---

[1] Plaintiff protectively filed prior applications for Supplemental Security Income payments on January 23, 1998, November 20, 1998, and July 26, 2000. [AR at 83-86, 87-90, 91-92.]

[2] Plaintiff filed subsequent claims for Disability Insurance Benefits and Supplemental Security Income payments on January 17, 2006, and December 28, 2006. The Appeals Council consolidated the subsequent claims and directed that they be considered on remand. [AR at 913.]

On September 24, 2007, a third hearing was held, at which plaintiff did not appear but was represented by counsel. Testimony was received from medical and vocational experts. [AR at 1145-82.] On December 14, 2007, the ALJ determined that plaintiff was not disabled. [AR at 890-97.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

/
/
/
/
/

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[3] [AR at 892.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: hypertension with evidence of end organ damage, arthritis involving the right shoulder and right knee status post low back surgery, and mood disorder. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 892-93.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform a range of light work.[5] Specifically, the ALJ determined that plaintiff can perform "light work except lifting or carrying greater than 20 pounds occasion[ally and] 10 pounds frequently"; she can sit without restrictions; she can stand and walk "six out of eight hours provided hourly changes for one to three minutes at a time"; she is "precluded from work requiring climbing ladders" or "more than occasional climbing of stairs, stooping, kneeling, crouching, crawling or balancing[,] or reaching overhead with the right upper extremity"; she is limited to "occasional walking on uneven terrain or operation of controls with the right lower extremity"; she is "precluded from airborne irritants above street level"; and she is "capable of simple repetitive work tasks." [AR at 893-94.] At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. [AR at 896.] At step five, the ALJ found, based on the vocational expert's testimony, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 896-97.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 897.]

---

[3]   The ALJ considered the period of disability starting from January 23, 1998, the protective filing date of the earliest of plaintiff's prior applications. The District Court's remand concerned the June 19, 2003, application, however, in which plaintiff alleged that the onset date was May 19, 2002. [AR at 93-95.]

[4]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[5]   Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly develop the record; (2) properly consider the treating physician's opinion; (3) properly consider plaintiff's obesity; (4) properly consider plaintiff's chronic cystitis; (5) properly consider plaintiff's central canal stenosis; and (6) properly consider the combined effect of plaintiff's impairments in determining whether her impairments medically equaled a listed impairment. Joint Stipulation ("Joint Stip.") at 4-5. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

## A.   FAILURE TO DEVELOP THE RECORD

Plaintiff contends that the ALJ failed to properly develop the record by obtaining the MRI results concerning her spinal stenosis. Joint Stip. at 5-9. Specifically, plaintiff asserts that "[g]iven the importance of the potential limiting effects of [her] spinal stenosis[,] it was incumbent upon the ALJ to analyze all the records pertaining thereto." Joint Stip. at 9. Defendant argues that the ALJ satisfied his duty to develop the record by leaving the record open for thirty days after the hearing to allow plaintiff additional time to submit documents. Joint Stip. at 9-10.

The ALJ has an affirmative duty to fully and fairly develop the record. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, only "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). If evidence from the medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). The responsibility to see that this duty

is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).

In a May 3, 2007, Physical Case Summary prepared in connection with the disability applications filed by plaintiff in 2006, Mary Murillo, DEA III, summarized, among other things, the medical records from Arrowhead Regional Medical Center ("ARMC"). [AR at 1057-59.] In particular, Ms. Murillo noted that a December 15, 2006, MRI of plaintiff's lumbar spine showed "extensive postsurgical changes L5-S1 with suggestion of moderate central canal stenosis."[6] [AR at 1058.]

At the September 24, 2007, hearing, the ALJ discovered that page one of the December 15, 2006, MRI report from ARMC was missing from the file.[7] [AR at 1081, 1159-61, 1176.] Dr. Sami Nafoosi, a medical expert, informed the ALJ that the MRI report showed "extensive post-surgical changes at L5/S1."[8] [AR at 1161.] The ALJ asked plaintiff's counsel to make sure that the ALJ received a copy of the missing page of the MRI report.[9] [AR at 1162.] Thereafter, plaintiff's counsel questioned Dr. Nafoosi regarding the contents of the MRI report, as follows:

> Q: So -- and the MRI that I showed you earlier from December of '06, of the back, it indicates that the -- that they measure the AP diameter at L5/S1 and they say that there's central canal stenosis down to 6 millimeters. What is normal?
> A: Oh, I don't know what's normal.
> Q: Does 19 millimeters sound about normal?
> A: I don't know. I mean, if they say spinal canal stenosis, I'll accept it. I don't know the --
> Q: Could this --
> A -- dimensions.

---

[6] Ms. Murillo noted that in July 2006, plaintiff underwent "bilateral laminectomies and foraminotomies and L5-S1 diskectomy." [AR at 1057.]

[7] The December 15, 2006, MRI report was a two-page report. Page two does not contain any relevant information concerning the results of the MRI. [AR at 1081.]

[8] Dr. Nafoosi noted that plaintiff underwent surgery on her lower back in July 2006. [AR at 1157, 1161-62.]

[9] Plaintiff's counsel told the ALJ that counsel would make a copy of the missing page of the MRI report. [AR at 1176.]

[AR at 1173.] In light of the MRI results and plaintiff's ongoing complaints of back pain, plaintiff's counsel asked the ALJ to consider whether plaintiff met or equaled Listing 1.04A or 1.04C.[10] [AR at 1181.]

Page one of the December 15, 2006, MRI report was not made part of the administrative record, and the ALJ did not discuss this evidence in his December 14, 2007, decision. This failure warrants remand.

In his April 29, 2005, decision, the ALJ did not find that plaintiff had a severe back impairment despite plaintiff's allegation that she was unable to work due to, among other things, back pain. [AR at 18-19.] Following that decision, plaintiff underwent back surgery. [AR at 1157, 1161-62.] Dr. Nafoosi testified at the September 24, 2007, hearing that "the indication for back surgery is radiculopathy," and that patients "have to show signs of radiculopathy" to undergo back surgery. [AR at 1175.] He observed that the December 15, 2006, MRI showed "extensive post-surgical changes at L5/S1." [AR at 1161.] Similarly, Ms. Murillo noted that the MRI demonstrated "extensive postsurgical changes L5-S1 with suggestion of moderate central canal stenosis." [AR at 1058.]

The December 15, 2006, MRI purportedly showed significant degenerative changes in plaintiff's spine. This medical evidence could support plaintiff's allegation of a disabling back

---

[10] A claimant meets Listing 1.04, for disorders of the spine, where there is:
    A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
    or
    . . . .
    C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.
20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A & C.

impairment.[11] Without the MRI report, the record does not allow for proper evaluation of plaintiff's back impairment. Accordingly, the ALJ had an affirmative duty to obtain this medical evidence. The ALJ's failure to specifically address the MRI report warrants remand.

Defendant's argument that the ALJ properly discharged his duty to develop the record by leaving the record open after the hearing is unpersuasive. Here, the record shows that an MRI report indicating central canal stenosis exists and that plaintiff's counsel intended to submit it to the ALJ. However, it is unclear from the record whether plaintiff's counsel in fact provided the ALJ with the missing page of the MRI report. Under these circumstances, the Court cannot find that the ALJ properly discharged his duty to develop the record by simply leaving it open for the submission of additional medical evidence. Rather, the ALJ had an affirmative duty to obtain the missing page by contacting either plaintiff's counsel or ARMC. See Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1983) (Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel).

**B.  OBESITY**

Plaintiff argues that the ALJ failed to consider the impact of her obesity on her ability to work. Joint Stip. at 17-18, 21. Defendant contends that plaintiff failed to meet her requisite burden of proving that her obesity resulted in any significant limitations in her ability to work. Joint Stip. at 18-19.

The medical records indicate that from the year 2000 through 2007, plaintiff, who is five feet four inches tall, weighed anywhere from 172 pounds to 217 pounds. [AR at 257-72, 559-87, 607, 610, 658-67, 673-74, 677-747, 852, 985-1021, 1101, 1125.] On multiple occasions, the treating physician noted that plaintiff was obese. [AR at 263, 565.] Neither plaintiff nor her counsel raised the issue of obesity in plaintiff's disability applications or at any of the hearings. [AR at 107-12, 136-45, 146-55, 174-83, 197-206, 826-57, 858-86, 973-79, 1145-82.]

---

[11] Moreover, the MRI report partially corroborates the treating physician's opinion, which the ALJ largely discounted as unsupported and inconsistent with the totality of the medical evidence of record. [AR at 896, 1092.]

In Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003), the Ninth Circuit held that an ALJ should consider the effect of a claimant's obesity, in combination with her other impairments, on her health and ability to work even where the claimant does not raise the issue. Id. at 1182. The Ninth Circuit came to this conclusion based on the facts that: (1) the claimant had implicitly raised the issue of obesity in her report of symptoms; (2) the record clearly showed that the claimant's obesity was at least close to the listing criterion, and "could exacerbate her reported illnesses"; and (3) claimant was pro se which, when combined with the ALJ's personal observation of the claimant and the information in the record, should have alerted him to the need to develop the record on her behalf. Id.

More recently, in Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005), the Ninth Circuit distinguished its holding in Celaya, finding that the ALJ had no duty to consider the claimant's obesity because the record did not indicate that the claimant's obesity "exacerbated her other impairments (other than possibly her back pain)." Id. at 682. "More significantly," the Ninth Circuit stressed that, unlike the claimant in Celaya, the claimant in Burch was represented by counsel. Id.

On this issue, the Court agrees with defendant's position. First, and importantly, plaintiff was represented by counsel at the administrative hearings. Neither plaintiff nor her counsel ever raised the issue of obesity at any of the hearings, or in her disability applications. Second, plaintiff has not presented any evidence that her obesity exacerbated her other impairments or contributed to her functional limitations. Although various physicians noted that plaintiff was obese, none of them found that it limited her ability to work. Nor did they find that plaintiff suffered from any functional limitations due to her weight. [AR at 257-72, 559-87, 607, 610, 658-67, 673-74, 677-747, 852, 985-1021, 1101, 1125.] The Court concludes that the ALJ did not err in failing to address plaintiff's obesity, and, therefore, remand on this issue is not warranted. See Sanchez v. Sec'y of Health & Human Servs., 812 F.2d 509, 511-12 (9th Cir. 1987) (holding that a claimant represented by counsel could not obtain reversal of the ALJ's decision on the ground that the ALJ failed to consider a particular impairment, even where the record before the ALJ contained some evidence of it, where the impairment "was not significantly at issue at the hearing" and where the

claimant offered no explanation for his failure to press the particular claim of impairment at or before the hearing).

**C.  CHRONIC CYSTITIS**

Plaintiff claims that the ALJ erred in failing to find that her chronic cystitis constituted a severe impairment at step two of the evaluation process. Joint Stip. at 21-23, 25. Defendant argues that plaintiff failed to establish medical severity as to her chronic cystitis. Joint Stip. at 24-25.

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. "The Supreme Court has recognized that including a severity inquiry at the second stage of the evaluation process permits the [Commissioner] to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). However, an overly stringent application of the severity requirement would violate the statute by denying benefits to claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing Bowen v. Yuckert, 482 U.S. at 156-58). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Bowen v. Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'"); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work). An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. See Corrao, 20 F.3d at 949 (citing Yuckert

v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling[12] 85-28)); see also Smolen, 80 F.3d at 1290 (citations omitted); 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "physical functions . . . ," "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6).

In a February 5, 2007, letter, plaintiff's treating physician, Dr. Juan Velasquez, noted that plaintiff suffered from "multiple chronic medical conditions," including chronic cystitis.[13] [AR at 1092.] A renal ultrasound performed on September 5, 2006, revealed "mild thickening and irregularity of the urinary bladder wall" that "is nonspecific and may represent chronic irritation/cystitis." [AR at 1086.] A December 14, 2006, CT scan of plaintiff's abdomen and pelvis revealed "persistent bladder wall thickening." [AR at 1082.] A second CT scan of plaintiff's abdomen and pelvis performed on September 28, 2006, demonstrated an "abnormal bladder," evidenced by the "thickening of the bladder," "etiology uncertain." [AR at 1084.] A urine test performed on February 28, 2007, showed "mixed inflammatory cells with reactive urothellal [sic] cells." [AR at 1102.]

In the Physical Case Summary dated May 3, 2007, Ms. Murillo noted that, on September 19, 2006, plaintiff presented to the emergency room at ARMC with complaints of bladder pain and urinary retention. [AR at 1057.] Then, on November 8, 2006, plaintiff reported that she needed to self-catheterize four times during the day and more frequently during the night.[14] [AR at 1057.]

---

[12] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[13] "Cystitis" is an "inflammation of the urinary bladder." Merriam-Webster's Online Dictionary, http://www. merriam- webster.com (last visited June 25, 2009).

[14] Ms. Murillo also summarized a March 5, 2007, treatment note from ARMC, which was made part of the administrative record but is difficult to read. Specifically, Ms. Murillo reported that

Ms. Murillo also noted that a November 26, 2006, treatment note from McKee Clinic reflected "acute exacerbation of chronic cystitis." [AR at 1058.] These records were not made part of the administrative record for purposes of this Court's analysis.

Despite Dr. Velasquez's letter stating that plaintiff suffered from chronic cystitis, the medical records do not evidence a conclusive diagnosis of this disease. However, they do demonstrate, at a minimum, that plaintiff suffered from an abnormal bladder as evidenced by the thickening of the bladder wall. Moreover, Ms. Murillo's case summary indicates that plaintiff experienced pain and required self-catheterization due to her bladder condition. It is unclear from the record the effect plaintiff's bladder had on her ability to work. Plaintiff's need to self-catheterize and/or the pain she experienced from her bladder condition may have an effect on her ability to work. To the extent the ALJ found plaintiff's bladder condition not severe, the record must be further developed to evaluate this issue. Specifically, the ALJ should obtain the above-noted medical records that were not made part of the administrative record and, if necessary, a medical opinion on the effect plaintiff's bladder condition may have on her ability to work.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to develop the record concerning plaintiff's spinal stenosis and her bladder condition. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.[15]

---

plaintiff was "[n]oted to have NGB (neurogenic bladder?) with self catheterization BID but voids in between (?)." [AR 1058, 1101.]

[15] As the ALJ's further development of the record may impact the remaining issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address those issues in this Order.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: June 25, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE